IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jenni M. Smith, et al.,　　　　　　　　　　Case No. 3:13 CV 2649

　　　　　　　Plaintiffs,　　　　　　　　　MEMORANDUM OPINION

　　　　　　　-vs-　　　　　　　　　　　　JUDGE JACK ZOUHARY

CSX Transportation, Inc.,

　　　　　　　Defendant.

## INTRODUCTION

This Memorandum Opinion supplements an earlier bench ruling (Doc. 24) denying Defendant CSX Transportation, Inc.'s ("CSX") Motion to Dismiss for Failure to State a Claim (Doc. 15). Plaintiffs opposed the Motion (Doc. 18), and CSX replied (Doc. 21). This Court heard oral argument (Docs. 22 & 23). After voluntarily dismissing several claims, Plaintiffs now pursue only negligence and qualified nuisance claims (Docs. 10 & 19). This Court denied CSX's Motion for the reasons below.

## BACKGROUND

Two days before Thanksgiving, in November 2013, four railcars derailed at Willard Yard in Willard, Ohio (Doc. 10 at ¶ 1; Doc. 15-1 at 2). One of the railcars carried Styrene Monomer, a liquid chemical (Doc. 10 at ¶ ¶ 1 & 26). The railcar ruptured, and Styrene Monomer spilled onto the grounds of Willard Yard (*id.* at ¶ 26). Styrene Monomer is "harmful if swallowed, can burn the skin and eyes," and can be "irritating to the throat" if inhaled (*id.*). The vapors can cause "dizziness and

loss of consciousness" (*id*.). Styrene Monomer is "moderately toxic, highly flammable, and highly reactive" (*id*.). Due to the chemical spill, approximately 400 homes and "hundreds to thousands of residents within a half-mile to mile radius" of the spill were forced to evacuate (*id*. at ¶ 35).

Plaintiffs, a proposed class of Willard residents evacuated after the spill, allege CSX negligently installed "used rail in the location of the accident site prior to the incident," failed to perform rail safety inspections (*id*. at ¶¶ 28 & 29), and to correct any safety issues regarding the "structural integrity" of the rail (*id*. at ¶¶ 29 & 31), thereby causing the derailment and chemical spill (*id*. at ¶ 37).

### STANDARD OF REVIEW

Under Federal Civil Rule 12(b)(6), this Court tests the legal sufficiency of a complaint, which requires accepting all well-pleaded factual allegations as true and construing the complaint in the light most favorable to plaintiffs. *See Duabay v. Wells*, 506 F.3d 422, 426 (6th Cir. 2007). Although the complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *See Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

**DISCUSSION**

CSX advances three principal arguments in support of its Motion to Dismiss: (1) Plaintiffs' claims are preempted by the Interstate Commerce Commission Termination Act ("ICCTA"); (2) Plaintiffs' claims are preempted by the Federal Railroad Safety Act ("FRSA"); and (3) the Amended Complaint fails to allege a legally cognizable injury (*see generally* Doc. 21).

**Preemption**

The Supremacy Clause provides "the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. "[T]he purpose of Congress is the ultimate touch-stone in every preemption case." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1964)). "[I]n all preemption cases we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wimbush v. Wyeth*, 619 F.3d 632, 642 (6th Cir. 2010) (internal quotation marks omitted).

*ICCTA Preemption*

Plaintiffs allege CSX negligently inspected and used defective track in violation of Federal Railroad Administration ("FRA") regulations, resulting in the derailment and chemical spill (Doc. 10 at ¶ 29). These allegations involve railroad safety procedures, which the FRSA -- not the ICCTA -- was enacted to regulate. 49 U.S.C. § 20101 (citing the purpose of the FRSA as promoting "safety in every area of railroad operations and [to] reduce railroad-related accidents and incidents"). *See also id*. § 10101 (citing ICCTA policies regarding the regulation of railroad transportation). Under the ICCTA, the Surface Transportation Board ("STB") has exclusive jurisdiction over "transportation by

3

rail carriers . . . with respect to rates, classifications, rules, practices, routes, services, and facilities" as well as "the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities." *Id*. § 10501(b). ICCTA's preemption provision states "except as otherwise provided in this section, the remedies provided under this part with respect to regulation or rail transportation are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. § 10501(b)(2). Plaintiffs' claims of negligence and qualified nuisance are based solely upon allegations that CSX failed to comply with FRA safety regulations regarding the inspection of defective rails (Doc. 10 at ¶¶ 29, 37 & 52). Because those claims relate to rail safety, and do not amount to the economic regulation of railroads, the ICCTA does not preempt Plaintiffs' claims.

### *FRSA Preemption*

The FRSA preempts any state or local law, regulation, or order that is "an additional or more stringent law, regulation, or order related to railroad safety or security." 49 U.S.C. § 20106(a)(2). But states may enforce a law regarding railroad safety or security until the FRA prescribes a federal regulation covering the specific subject matter. *Id.* § 20106(a)(2). *See also* 49 C.F.R. § 1.89(a) (delegating the Secretary of Transportation's authority under 49 U.S.C. § 20106 to the FRA). Even when the FRA prescribes safety standards, a state may still enforce an "additional or more stringent law" related to the same subject matter if: (1) it is necessary to prevent a local safety or security hazard; (2) it is not incompatible with a federal regulation on the safety issue in question; and (3) it does not "unreasonably burden" interstate commerce. *Id*. § 20106(a)(2). A 2007 clarification amendment further provides "nothing in [the preemption] section of the FRSA shall be construed as preventing an action under State law seeking damages for personal injury, death, or property damage"

4

when the claim alleges that a party has "failed to comply" with a federal regulation, the party's own safety standard, or a state law or regulation that has met the criteria set forth in Section 20106(a)(2). *Id*. § 20106(b)(1).

The FRSA does not preempt Plaintiffs' claims of negligence and qualified nuisance. Although the FRA has prescribed regulations regarding the inspection of rails, Plaintiffs allege CSX failed to comply with those regulations (Doc. 10 at ¶¶ 29, 37 & 52). *See also* 49 C.F.R. § 213.233 (regulating inspections of railroad tracks); *id*. § 213.113 (regulating the continued use or replacement of defective rails). Specifically, the FRA requires track to be inspected "on foot or by riding over the track in a vehicle at a speed that allows the person making the inspection to visually inspect the track structure for compliance." 49 C.F.R. § 213.233. The FRA further requires the railroad owner to consult a designated expert to determine whether defective track needs replacement or repair. *Id*. § 213.113. The Amended Complaint alleges a failure to comply with these visual inspection regulations (Doc. 10 at ¶¶ 29, 37 & 52), and Plaintiffs do not base a breach of duty claim on the failure to use inspection methods not required by federal regulations or by CSX policy that is based on federal regulations. As such, Plaintiffs' claim is not preempted by the FRSA. 49 U.S.C. § 20106(b)(1).

**Injury Allegations**

CSX also argues the Amended Complaint does not allege a legally cognizable injury, an essential element of either tort claim (Doc. 21 at 10). First, CSX contends the Amended Complaint must state, with respect to each named Plaintiff in this class action, the precise injuries each claims to have suffered (*id*. at 12–13). The Amended Complaint alleges that CSX was negligent by failing to perform full or proper track inspections in violation of FRA regulations resulting in the derailment and chemical spill (Doc. 10 at ¶¶ 29 & 33). The Amended Complaint also identifies injuries suffered

5

by Plaintiffs (*id*. at ¶ 36) (listing resident evacuation, payment of monetary expenses for "professional cleanup/remediation of their homes," physical discomforts including "eye and throat irritation, headaches, fatigue, nausea, throwing up . . . [exposure to] noxious gases, disagreeable odors and emotional distress" as injuries suffered by the named Plaintiffs, as well as the class). As required under Federal Civil Rule 8, the Amended Complaint provides CSX sufficient notice of the injuries claimed by Plaintiffs.

Second, CSX contends the harms alleged by Plaintiffs are not legally recognized under either a negligence or qualified nuisance claim (Doc. 21 at 10). Nuisance is "the wrongful invasion of a legal right or interest," including the invasion of "the use and enjoyment of property" or of "personal legal rights and privileges." *Banford v. Aldrich Chem. Co.*, 126 Ohio St. 3d 210, 213 (2010). A qualified nuisance claim depends on "an appreciable, substantial, tangible harm resulting in actual, material physical discomfort." *Id*. *See also Allen Freight Lines v. Consol. Rail Corp.*, 64 Ohio St. 3d 274, 275–76 (1992) (holding negligence must be proven in order to warrant recovery for a qualified nuisance claim, as the nuisance claim relies upon a finding of negligence); *Mussivand v. David*, 45 Ohio St. 3d 314, 318 (1989).

Plaintiffs have sufficiently pled legal injuries by alleging they were evacuated from their residences, incurred monetary expenses for professional cleanup of their homes, and suffered physical discomforts including "eye and throat irritation, headaches, fatigue, nausea, throwing up and inconvenience, [exposure to] noxious gases, disagreeable odors and emotional distress" (*id*. at ¶ 36). These harms are cognizable injuries for purposes of a qualified nuisance. *Banford*, 126 Ohio St. 3d at 214–15 (citing nausea, headaches, fatigue, noxious gases, and disagreeable odors as physical discomforts that sufficiently supported an award of damages in qualified nuisance claims). Although

defendant in *Banford* did not contest plaintiff's nuisance claim, physical discomfort is sufficient to establish a claim of qualified nuisance and to allow for a determination of damages caused by the nuisance. *Id*. at 214 (holding that the "same standard appl[ies] whether evaluating the existence of a nuisance or evidence of the damages caused by the nuisance").

## CONCLUSION

For these reasons, and those stated during the hearing, CSX's Motion to Dismiss (Doc. 15-1) is denied.

IT IS SO ORDERED.

                                              s/ *Jack Zouhary*
                                             JACK ZOUHARY
                                             U. S. DISTRICT JUDGE

July 25, 2014